Case number 14-1192, Owner-Operator Independent Drivers Association, Inc. Petitioner v. Environmental Protection Agency. Mr. Cullen for the petitioner, Ms. Walter for the respondent, and Mr. Poole for the intervener. Good morning. Good morning. May it please the court, my name is Paul D. Cullen Jr. and with me is my co-counsel Daniel Cullen. We represent the Petitioner-Owner-Operator Independent Drivers Association and a national association of 150,000 small business truck drivers who would be impacted by the rule approved by EPA and challenged here. The petitioner has filed a timely petition under 42 U.S.C. 7607. And I would like to first go talk about our main argument is against the constitutionality of CARB's rule. Under the Pike Balancing Test, we weigh the burden imposed on interstate commerce in relation to the punitive local benefits. What about whether we even have jurisdiction to hear this matter? I mean, I don't really see from your petition any place where you are challenging the actual waiver decision by the EPA. That is correct. Did you say that is correct? That is correct. You are in no way challenging the EPA waiver decision. If the EPA does not have authority to pass judgment on the constitutionality of CARB's rules, then that is correct. We are relying on the Court's decision in MEMA in which under the same... But in MEMA there was a challenge brought to the waiver and the constitutional issues were ancillary. Here we don't have a challenge to the EPA decision. That's a significant difference between this case and MEMA. We did not... The Court certainly treated those constitutional challenges as ancillary, but they did take them. But there was a challenge to the waiver. You haven't brought a challenge to the waiver here. Why isn't that a dispositive distinction between this case and MEMA? There is... This is the only case law in which the constitutionality of California's waiver... California's request for a preemption waiver has been challenged. And in it, the Court, and I quote, Petitioners are assured through a petition for review here that their contentions will get a hearing. And that was specifically in the discussion of whether or not the Court had authority to address the constitutional issues. Is your theory that the waiver is impermissible when the regulation or state law is unconstitutional? Our... No. I'm sorry, I couldn't take apart your question to... Is the waiver impermissible? The waiver would be impermissible if it is an unconstitutional rule. We don't challenge the EPA's decisions that are not related to the constitutionality of the issue. If the Court finds that... Section 7607B is the section that gives us jurisdiction. And that speaks entirely in terms of challenging an action of the administrator. How do you get around that? Is MEMA your only argument? MEMA is the only signpost we found that pointed us to which court would be appropriate to address this. California's rules... American Trucking and MEMA would also say there's another court that's appropriate for that, and that's out in California. You're bringing a dormant commerce clause action that's typically brought against a state. Take it into state court. We only look at challenges to waivers, according to 7607B. The other fact which weighs in here is that California's rules had no effect. They were preempted under section 7543 until EPA granted the preemption waiver and gave life to them. Under section 7543A, there's a specific federal prohibition on states regulating in this area. And it's the decision under subsection B that gave legal effect to California's rules. If the Court believes that another court would be a more appropriate jurisdiction, we would ask you to transfer us there. Why wouldn't we dismiss it without prejudice? If we decide there's no jurisdiction, then EPA shouldn't be a party, right? So why wouldn't we just dismiss it without prejudice? Is there a limitations issue here? If it is held that we must appeal within 60 days of the... The California rules had no legal effect until the EPA made its decision granting the waiver. If we are to be held under the 60-day rule in 7607 to bring a challenge within that time, then there would be a statute of limitations. So wouldn't you be bringing a section 1983 claim against the state? Correct. Wouldn't that have whatever the tort, California tort statute of limitations is, which I believe is two years? Presumably so. And since the waiver didn't take effect until, was it sometime last year, you'd still be well within two years? That appears to be correct, Your Honor. Why wouldn't we deny it rather than dismiss it? You haven't challenged... It seems to me you're asking for review of the waiver decision, but you're not arguing any basis on which the waiver decision was incorrect. It was incorrect in that the effect of the waiver decision was to permit California to violate the Constitution, and the administrator does not have the authority to give California that authority. Is that wrapped up in the waiver factors, however? Where do you get that? According to the, it is not. But we get that from the fact that the California rules had no legal effect until the EPA granted the preemption waiver. But could EPA have denied the waiver on the ground that the regulation, the state law, was a dormant commerce clause problem? No, it could not. Right. So you're not raising any merits-based challenge to the waiver decision, it seems to me. You're formally asking for review of the waiver decision, petitioning for review of the waiver decision, but you're raising no real substantial argument as to why that was incorrect, which seems to me would deny the petition, arguably. I mean, dismiss is another avenue, but even assuming we got past that, we would deny it because you haven't argued any basis on which the waiver decision was improper. Correct. I also would like to draw the Court's attention. So your whole thing is MEMA I is just an alternative route for review of the underlying state law's constitutionality. It's the only precedent in which a court has discussed the constitutionality, reviewed the constitutionality, of the underlying CARB rules that were granted a waiver. But even if the state law or regulation were unconstitutional, that doesn't make the waiver decision unconstitutional, correct? It has unconstitutional effect. Right. Because without the waiver decision, California's laws would not have any effect. And our strongest argument on the constitutionality is under the Pike balancing test. We know that the cost of this rule in the record would be almost $10 billion to the out-of-state truckers. And the EPA described that that was 90% of the total costs imposed. And under the CARB's record that they made at the Joint Appendix 55, their numbers show that it's 95% of the costs. And yet there is no record of what environmental benefit there would be achieved from the out-of-state trucks. That's what Pike balancing. They look at the burden imposed on interstate commerce in relation to the putative local benefits. What are the benefits environmentally from imposing it on the subset of trucks from out-of-state who come into the loop? Don't you have a tough time making a dormant commerce clause argument when it's California and the Clean Air Act? I mean, hasn't Congress blessed this special arrangement to allow California to go its own way? They have to an extent, but not to violate the dormant commerce clause. Congress can give such permission to a state to act in a way that would otherwise violate the dormant clause, but there must be a clear expression of approval by Congress. Under the South Central Timber Development v. Wannake case, 467 U.S. 82 at 92, Congress must be unmistakably clear that it intended to permit a state regulation. And I have two precedent that show that a grant of a waiver preemption is not that carte blanche permission to regulate in any manner that would otherwise violate the Constitution. The Supreme Court held in New England Power Company v. New Hampshire, 455 U.S. 331, that the grant of Congress to a state that it may regulate in an area that would otherwise be preempted by federal law does not grant authority to otherwise violate the commerce clause. In an analogous case dealing with California and the Clean Air Act, the Ninth Circuit found that a grant of a preemption under the Clean Air Act, under U.S. Code 42 U.S.C. 7545 regarding fuel additives, that that preemption waiver, which mirrors the one in this case, was not an express exemption from commerce clause scrutiny. That's in Rocky Mountain Farmers Union v. Corey, 730 F. 3rd, 1070 at 1106. And that was a 2013 Ninth Circuit case. And so under the pike balancing test, we have the respondents acknowledge that 90 to 95% of the economic burden, $10 billion is imposed on the out-of-state trucks, but they do not recognize what portion of their environmental benefits will come from those trucks adopting this equipment. And now petitioners said to a study in their comments to the agency, a study from the University of California, Davis, entitled Assessment of Out-of-State Heavy Truck Activity Trends in California, that only 30% of the heavy truck highway miles in California are by truckers outside of California. So under this rule, they will incur $10 billion, or 95% of the burden of this rule, and this is the 30% of the traffic of highway heavy use traffic in California. It far outweighs... Judge, I just want to notice you're well into your rebuttal time. If I may reserve the rest of my time for rebuttal. Thank you. Good morning. Good morning, Your Honors. I'm Michelle Walter with the Department of Justice, representing the United States Environmental Protection Agency, and with me at council table is Winifred Okoye from EPA's Office of General Counsel, and also Mark Poole from the California Attorney General's Office, who will be presenting arguments on behalf of the board as well. I do want to start with the jurisdictional issue that Judge Griffith and Judge Wilkins raised, and actually, Judge Griffith, you made a couple of the points that I was going to make, especially with respect to the MEMA I and the ATA language. But I also wanted to point out that in those two cases, the court also said that if the plaintiffs have an issue with the substance or the procedures of the board's regulations, they can attempt to file a challenge directly to those regulations. So it's important to note that the court has acknowledged that possibility before. What if they're saying that the waiver decision is unlawful to the extent the underlying state law is unconstitutional? I understand that that could possibly be their argument. But, again, here you're trying to look at practical considerations. But on my question, doesn't MEMA I at least give some force to their argument? Maybe MEMA I speaks imprecisely on this topic. I'm not sure MEMA I contemplated this type of situation. Again, I think, as Judge Griffith, you pointed out, MEMA I exercised a type of ancillary jurisdiction in effect to consider the constitutional challenges there, which did not include- Do you think it was correct? I'm sorry? Do you think MEMA I was correct in doing that? In its overall holding or in that particular passage? In that particular- Yeah, in that particular passage. As a general matter, I think that is correct when it comes to finding that when an agency doesn't have authority to consider a constitutional issue, which they typically don't, as this Court has noted, that it would be appropriate for the Court to hear those issues. But how is that different from this case, then? A couple of reasons. First of all, Petitioner's counsel was incorrect when he said that they essentially have to challenge this waiver because the underlying California regulations otherwise would have no effect. While that's true, that the regulations wouldn't actually have effect, that doesn't mean that they wouldn't be right for review. And, in fact, there was a challenge that was brought in a California district court in the Central Valley Jeep case, which we cite in our brief, where the plaintiffs did challenge the California regulations before the waiver had been granted. And the Court ruled, as we argue here, that they actually can't bring a dormant commerce clause challenge, which may explain why they've tried to bring this challenge here and effectively bootstrapping a claim against EPA's waiver because a California district court has already said that a dormant commerce clause challenge can't be brought against the California regulations. So that's one reason to distinguish that particular language in MEMA. But, again, I don't think they were contemplating this particular type of situation. And, again, the Court also noted elsewhere in MEMA I that if petitioners were dissatisfied with the substance of the Board's regulations, they could bring a challenge directly to those regulations. Well, correct me where I'm wrong. MEMA I suggests that the administrator may not be able to consider the constitutional challenges, but nonetheless, and therefore should grant the waiver, may grant the waiver, but nonetheless the Court will review those constitutional challenges. Yes, that's what the Court said. That's correct. And that's what they're saying they want here. And we understand that that's their argument. But, again, because they haven't substantively challenged EPA's waiver like they did in MEMA I, we think that that's a critical distinction. Is that just a failure in pleading almost? You're saying if they had brought this as a challenge using the statutory factors that go into the waiver decision, if that had been part of this case, we'd be free to take up the dormant commerce clause issue? Then I think we would have been in a more analogous situation with MEMA I. And let me give you a specific example. All of the arguments that they present here concerning what they claim to be excessive costs and the burdens in comparison to the benefits of the California regulations, those same types of arguments could have been made in an argument that directly challenged EPA's analysis of the third criterion in Section 209B. That's the criterion where EPA looks at whether the technology is going to be infeasible because it can't be implemented within the lead time given or because the costs are going to be too excessive. Those same types of arguments could have been brought here, and yet they failed to do that. Instead, they brought their dormant commerce clause challenge. So it's a little perplexing to EPA as to why they couldn't have brought that challenge substantively to EPA's waiver decision instead itself. Also in MEMA I, there was a challenge as to whether this particular California regulation was in the scope of the administrator's authority, preemption authority, or to waiver the preemption because of, I guess, the argument that it was really more of a maintenance regulation than something that really had to do with emissions. So there was at least a meaty scope argument, APA argument, that was there in MEMA I, right? Correct, and then there were some other substantive challenges, I believe, to EPA's actual consideration of some of the criteria under Section 209 as well, which, again, they don't present here. I would like to move on just briefly. I guess I'm still at a loss as to why MEMA I allows, in your view, allows the court to go on and consider a constitutional challenge that the administrator could not have considered. I'm sorry, could you rephrase your question again? Yeah, well, what's your theory as to why MEMA I allowed the court to consider a constitutional challenge to the underlying state law that the administrator could not consider? As the court recognized, I believe, in that case as well as others, the court does have the ability to consider constitutional issues because federal agencies don't have the authority to issue opinions or do analysis of constitutional issues with respect to federal statutes. So where a federal agency doesn't have the authority to consider a constitutional issue, which EPA doesn't have here under Section 209, then the court can, as MEMA I said, consider those constitutional issues. But again, it was a very broad statement by the court in terms of... What principle would we use to distinguish between constitutional issues we take up and those we wouldn't? I think if you want to try and draw a line, the line here is with respect to this type of dormant commerce clause claim that petitioners have brought, which notably the dormant commerce clause can't be violated by a federal agency. So if you want to try to draw a line between those types of constitutional claims, that would be where I would start with that. So in that case, if they had brought a challenge to the EPA waiver, you're now saying we wouldn't take up the dormant commerce clause issue? Let's imagine that with the case that they have right now, they had also brought a challenge to the EPA waiver. I thought earlier you had said that would be analogous to MEMA I, which I thought meant we would then be able to take up the constitutional issues. But you're now suggesting no because it's dormant commerce clause? No, I didn't mean to be suggesting no. I'm just saying I was directing it more to your question about what types of constitutional issues. It could be something the court would obviously consider in exercising that type of ancillary jurisdiction, for lack of a better word, that the court exercised in MEMA I. But again, I think if they had brought that type of claim, which they haven't, then we'd be in a more analogous situation. But we just simply aren't because they didn't bring that same argument with respect to EPA's criteria. In the remaining couple minutes I have, I did want to touch briefly on the argument as to whether, if the court does proceed to consider the merits of the dormant commerce clause challenge, whether that type of claim can even be brought here. And one thing I would like to note is that, again, in the ATA and American Trucking case and in MEMA I, the court there said it would be virtually impossible for California to exercise the type of broad discretion that Congress intended to give to California if, for example, in the American Trucking case, California had to comply with various other statutory provisions that it wasn't required to comply with. The analogy here being that, as the legislative history makes abundantly clear, Congress affirmatively intended, and that's the type of intent that the Supreme Court in the Sporhes case has allowed, an affirmative intention to allow a state to regulate in an area that would otherwise be impermissible. And here, if you allow a dormant commerce clause challenge to be brought against California's regulations, it's severely hamstringing California in its ability to regulate the pollution that Congress fully intended them to be able to regulate to the exclusivity of all other states. So that language in American Trucking and in MEMA I, or excuse me, it's MEMA II, not MEMA I, where the court specifically noted California's broad discretion and how it shouldn't be hamstringed, I think is very important here to looking at that legislative history. And on five occasions in MEMA I, MEMA II, American Trucking, the Ford case, and engine manufacturers, this court has discussed that legislative history at length. Granted, it wasn't in this specific context, but a more clear legislative intent really can't be imagined where Congress specifically did the type of analysis that petitioners wanted to hear, which is weigh the costs against the burden that were going to be imposed on the auto industry. Are there any other questions? Why would we read MEMA I to allow some constitutional challenges and not others? Going back to Judge Griffith's question, I think if you are wanting to draw a line, I think it would be because the Dormant Commerce Clause challenges are fundamentally different from other types of constitutional challenges. Because? Because in this context, the Dormant Commerce Clause challenge cannot be brought against a federal agency. Only states can violate the Dormant Commerce Clause. But in MEMA I, they were arguing that the underlying state regulations were the unconstitutional action. Correct. And again, that could be a conclusion that the court would reach here, but I think the fact that we have a very obvious attempt to challenge only the board's regulations, the court may not even need to get that far as to try and figure out what lines to draw to distinguish MEMA I. We just don't have the situation that was present in MEMA I with respect to the lack of the substantive challenge here. If there are no other questions, then we would ask that the petition be dismissed, either on those prudential type of considerations we mentioned or dismissed entirely on the merits. Thank you. Good morning. Good morning, Your Honors. Deputy Attorney General Mark Poole, appearing on behalf of the Air Resources Board. Let me attempt to pick up where counsel for USDOJ left off in answering the questions from Judge Griffith and Judge Kavanaugh in terms of the principle of drawing a line between this case and MEMA. And we believe that the MEMA case can be refined here. This case presents an opportunity for that, at least, to mean that any constitutional challenges to the administrator's decision could be wrapped into a challenge to the waiver decision itself. And so we would suggest that would be the principle that would flow from MEMA. Do you think that's what was really going on in MEMA I? Well, we acknowledge that the First Amendment claim in that case addressed the consequences of the regulation at issue there, but we would suggest here that this presents an opportunity to refine that now going forward. Refine. I love that word. Refine precedent. I wish I could refine precedent. Well, obviously, it's this court's decision, and so we're here today suggesting that that might be a principle upon which the court could draw a distinction or clarify. Obviously, there's tension between ATA and MEMA I. But isn't your strongest argument that we don't need to resolve that here because they have not brought a challenge to the law? Absolutely, Your Honor. We fully agree with U.S. DOJ's argument on behalf of EPA on that point. We made that point in our papers, and clearly that is the prime distinction between the MEMA situation and here. We believe that Section 307 of the Clean Air Act and the APA both, in terms of jurisdiction, require a challenge to the underlying federal agency action. So if we weren't inclined to refine MEMA I, perhaps we could avoid it. That's correct. You wouldn't need to. That's enough of a distinction for the court to deny the petition, and we would agree with Judge Kavanaugh's suggestion in his earlier questioning in terms of denying it versus dismissing it. Denying rather than dismissing on the ground they haven't challenged the waiver decision. That's correct. And obviously here that does not leave Petitioner without a forum. As we've conceded, there is a forum in California, and as the MEMA court also clearly addressed in its standard of review discussion, there is a forum, an available forum, to bring these types of constitutional challenges in the California courts. And those constitutional challenges have been brought in many cases before this one. So let me, I believe that, you know, I don't want to repeat or cover ground that's already been covered in terms of the jurisdictional argument. I'm happy to answer any other questions, but let me also add a couple of prudential considerations that compel dismissal or denial here as well. First of all, as EPA argued, there really isn't an adequate record before this court upon which to decide the fact and tense Dormant Commerce Clause questions involved. As MEMA 1 stated, the waiver proceeding is a forum ill-suited to the resolution of constitutional claims. As a result, there was no adequate development of a record here for this court to consider. Even if there had been a more adequate record developed, proceeding here to resolve those kinds of questions under the Dormant Commerce Clause would tie ARB's hands from being able to fully defend itself without the ability to do discovery or cross-examine petitioner's evidence as it would at the trial court level. So those are a couple of prudential considerations for the court also to weigh. Today, petitioner only has argued the pike balancing prong of Dormant Commerce Clause jurisprudence. Quickly, let me address that in terms of balancing the benefits and the burdens. The benefits here are uncontroverted. The benefits are greenhouse gas reductions and reductions of NOx emissions in California that assist ARB and California in its attainment of the National Ambient Air Quality Standards. This also assists ARB in meeting its goals under its AB 32 Greenhouse Gas Reduction Program. As important, the net cost savings, the evidence in the record demonstrates that the net cost savings to tractor-trailer owner-operators is estimated to be $6,000 per tractor and $13,000 per trailer here. That evidence, as found by EPA in the waiver decision, is uncontroverted. That's at Joint Appendix Site 461-62. The petitioner here has not offered any evidence that these cost benefits will not be achieved, and as a result, EPA found no evidence to question ARB's cost estimates. As a result, we would conclude, as ARB did in its administrative proceeding, that not only do the environmental benefits outweigh any potential burdens here, but the economic cost benefits to the petitioner's members as well justify a finding under pike balancing that the benefits outweigh the burdens. With that, I'm happy to answer any more questions. Thank you very much. Thank you. I just want to address one point from counsel for the Air Resources Board who described that there have been other cases in which the board's activities have been challenged on a constitutional basis. Petitioners here brought such a challenge in a federal district court in California. We cite to it in the footnote four on page nine of our reply brief. And we are on appeal from the dismissal in that case because the court held that because the Air Resource Board's regulations had been approved by EPA, that we are required to challenge EPA's decision and cannot bring a court in action directly against CARB in district court under the principles that when EPA approves the board's rules, then it has federalized those rules. That's on appeal to the Ninth Circuit. That's on appeal to the Ninth Circuit. And their position was that we had to sue under 7607 within 60 days, and we were beyond that time to appeal. Presumably, if we ruled against you here and the Ninth Circuit rules against you there, the Supreme Court will have to figure out the right path. Perhaps there would be greater likelihood if there was a split. And finally, with regard to the request to refine the cases, we would ask if you were to refine or clarify the ATA decision, it would be to describe that we do have the ability to go to district court so we know where we're going. Thank you. Thank you very much. The case is submitted.
judges: Griffith, Kavanaugh, Wilkins